UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
BYRON D. SALDANA,

Plaintiff,

-against-

L.B. NOVA CONSTRUCTION CORP. and
ARTURO LUGO, individually,

Defendants.
---------------------------------------------------------------X

Case No. ____-cv-________

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff BYRON D. SALDANA ("Plaintiff"), by and through his attorneys, Stillman Legal, P.C., for his Complaint against Defendants L.B. NOVA CONSTRUCTION CORP. ("L.B. Nova") and ARTURO LUGO ("Lugo," and together with L.B. Nova, "Defendants"), alleges as follows, upon personal knowledge as to himself and his own acts and observations, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. This is an action to recover unpaid overtime compensation and related relief for Plaintiff, a former manual construction and roofing laborer employed by Defendants, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (the "FLSA"), and the New York Labor Law, Articles 6 and 19 (the "NYLL"), together with the New York Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. Part 142.

2. From approximately the first week of October 2022 through approximately September 2025, Plaintiff worked for Defendants performing roofing, waterproofing, and related construction labor at changing construction job sites in New York to which Defendants directed him.

3. Throughout his employment, Plaintiff regularly worked six days per week, Monday through Saturday, totaling approximately fifty-seven (57) hours per week, and in some weeks worked additional hours when his weekday shifts extended into the evening.

4. Defendants paid Plaintiff on an hourly basis — approximately $16.00 per hour from the start of his employment through approximately October 2024, and $16.50 per hour from approximately November 2024 through the end of his employment — by company check issued approximately every two weeks.

5. Defendants, however, paid Plaintiff at his straight-time hourly rate for all hours worked, including hours in excess of forty (40) per workweek. Defendants never paid Plaintiff an overtime premium of one and one-half times his regular rate of pay for overtime hours, thereby depriving him of the additional half-time premium owed for approximately seventeen (17) overtime hours in a typical week.

6. Defendants did not require Plaintiff to punch or clock in or out and, upon information and belief, failed to make, keep, and preserve accurate records of the hours Plaintiff worked. Defendants likewise did not furnish Plaintiff with wage statements with his wage payments.

7. Defendants' own documents corroborate Plaintiff's account. Among other things, an April 22, 2025 letter on L.B. Nova letterhead, signed by Defendant Arturo Lugo as "President," certifies that Plaintiff "has been working in our organization on a full-time basis, for 2 1/2 years" and "earns $16.50 per hour," and payroll checks issued to Plaintiff are in amounts consistent with payment of a straight-time hourly rate, with no overtime premium, for substantially more than eighty (80) hours over two-week spans.

8. Plaintiff brings this action to recover his unpaid overtime compensation, liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, and the costs of this action, together with such other relief as the Court deems just and proper.

**JURISDICTION AND VENUE**

9. This Court has original subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

10. This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same common nucleus of operative facts as Plaintiff's FLSA claims — the hours Plaintiff worked for Defendants and the wages Defendants paid him — such that they form part of the same case or controversy.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant L.B. Nova maintains its office and principal place of business at 23-05 27th Street (also identified in certain records as 2305 27th Street, Suite 900), Astoria, Queens County, New York 11105, within this District, and because, upon information and belief, a substantial part of the events or omissions giving rise to Plaintiff's claims — including the administration of Plaintiff's employment from that office and the determination and issuance of his wage payments — occurred in this District.

**PARTIES**

**Plaintiff**

12. Plaintiff BYRON D. SALDANA is an adult individual residing in Brooklyn, Kings County, New York.

13. At all relevant times, Plaintiff was Defendants' "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e), and the NYLL, NYLL §§ 190(2) and 651(5).

14. Plaintiff consents to be a party plaintiff in this action pursuant to 29 U.S.C. § 216(b).

**Corporate Defendant**

15. Upon information and belief, Defendant L.B. NOVA CONSTRUCTION CORP. is a corporation organized and existing under the laws of the State of New York, with its office and principal place of business at 23-05 27th Street (also identified in certain business records as 2305 27th Street, Suite 900), Astoria, New York 11105.

16. L.B. Nova has also used a mailing address at 16 Mt. Bethel Road #229, Warren, New Jersey 07059, which appears on certain of the payroll checks it issued to Plaintiff.

17. Upon information and belief, L.B. Nova was established in or about 2018 and, at all relevant times, operated a construction and roofing business performing work at multiple construction job sites in New York.

18. Upon information and belief, during the relevant period L.B. Nova employed approximately sixty (60) employees.

19. At all relevant times, L.B. Nova was Plaintiff's "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, NYLL §§ 190(3) and 651(6).

**Individual Defendant**

20. Defendant ARTURO LUGO is an individual who, at all relevant times, was the President of L.B. Nova and, upon information and belief, an owner and/or principal of L.B. Nova.

21. Lugo signed the April 22, 2025 employment verification letter described herein, on L.B. Nova letterhead, in his capacity as "President."

22. As alleged more fully below, at all relevant times Lugo exercised operational control over L.B. Nova and over the terms and conditions of Plaintiff's employment, and was Plaintiff's

"employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL, NYLL §§ 190(3) and 651(6).

**DEFENDANTS WERE PLAINTIFF'S EMPLOYERS**

23. Workers at L.B. Nova, including Plaintiff, understood and identified Lugo as the owner and the person ultimately in charge of the business.

24. Before Plaintiff began working, Plaintiff first communicated about the job with Wilson Bermeo, a supervisor for L.B. Nova. On Plaintiff's first day of work, Lugo personally welcomed Plaintiff to the company and confirmed his employment. Plaintiff identifies Lugo as the person who ultimately hired him.

25. Upon information and belief, the same ownership and management remained in place throughout Plaintiff's employment, and Lugo remained the person ultimately in charge of L.B. Nova from the beginning through the end of Plaintiff's employment.

26. In or about September 2025, Lugo personally terminated Plaintiff's employment, telling Plaintiff in substance that there were issues or situations with the company, thanking him for his work, and directing him to pick up his final payment. Plaintiff's last day of work was on or about __________, 2025.

27. Lugo held and exercised the authority to hire and fire L.B. Nova's workers, including Plaintiff, and held authority over the rates and methods by which L.B. Nova's workers, including Plaintiff, were paid. Consistent with that authority, Lugo signed the April 22, 2025 letter on company letterhead certifying, among other things, Plaintiff's full-time status and his $16.50 hourly wage rate.

28. Defendants exercised day-to-day supervision and control over Plaintiff's work through L.B. Nova's supervisory personnel. Among others, supervisor Wilson Bermeo, acting on

behalf of L.B. Nova, regularly sent Plaintiff messages with the addresses of the job sites where he was required to report, assigned Plaintiff's work locations, visited the job sites, and directed the work. Additional on-site personnel of L.B. Nova also gave Plaintiff instructions at individual buildings.

29. Plaintiff did not work at his own convenience. He was required to report to the job sites designated by Defendants, at the times set by Defendants, and, once at work, he did not come and go at his pleasure but performed the tasks Defendants assigned to him.

30. Plaintiff's wages were paid by checks drawn on L.B. Nova's corporate bank accounts and signed by an authorized signatory of L.B. Nova, upon information and belief including Lugo.

31. By virtue of the foregoing, at all relevant times L.B. Nova and Lugo each possessed and exercised, both formally and as a matter of economic reality, the power to hire and fire Plaintiff, to supervise and control Plaintiff's work schedule and the conditions of his employment, to determine the rate and method of his pay, and to maintain (or fail to maintain) employment records, and together they jointly employed Plaintiff within the meaning of the FLSA and the NYLL.

## **FACTUAL ALLEGATIONS**

### **A. Plaintiff's Employment, Duties, and Work Locations**

32. Plaintiff worked for Defendants from approximately the first week of October 2022 until approximately September 2025 — a period of approximately two years and eleven months.

33. Plaintiff worked substantially continuously throughout the year during that period, without extended periods away from work, and did not take extended vacation or sick leave.

34. Plaintiff was employed as a manual construction and roofing laborer. His duties included, among other things, roofing work, waterproofing, insulation, painting, demolition,

flashing work, torch roofing, installing pavers, metal work on roofs, and other manual construction tasks assigned by Defendants.

35. Plaintiff's work consisted of manual physical labor. He did not supervise other employees, did not hire or fire anyone, had no authority over company operations or policy, and did not exercise discretion or independent judgment with respect to matters of significance. Plaintiff was not employed in a bona fide executive, administrative, professional, or other exempt capacity, and at all relevant times he was a non-exempt employee under the FLSA and the NYLL.

36. Plaintiff did not report to a single, fixed work location. Instead, Defendants directed him — typically by messages from supervisor Wilson Bermeo — to changing construction job sites, and Plaintiff reported directly to whichever job site he was assigned.

37. Plaintiff performed his work for Defendants at job sites located in New York. He did not perform work in New Jersey.

**B. Plaintiff's Work Schedule and Hours**

38. Throughout his employment, Plaintiff regularly worked six (6) days per week, Monday through Saturday. He generally did not work on Sundays.

39. Monday through Friday, Plaintiff generally worked from approximately 7:00 a.m. until approximately 5:00 p.m. to 5:30 p.m. On some days, the workday extended until approximately 6:00 p.m. or 6:30 p.m., and at times Plaintiff's workday reached approximately eleven (11) to eleven and one-half (11½) hours.

40. Plaintiff worked essentially every Saturday, generally from approximately 9:00 a.m. until approximately 4:30 p.m. to 5:00 p.m.

41. Plaintiff took a morning break of approximately fifteen (15) minutes to eat breakfast, which constituted a compensable rest period. Plaintiff's midday meal break was nominally thirty (30) minutes, but was often limited to approximately fifteen (15) to twenty (20) minutes.

42. Using Plaintiff's typical shift end times of approximately 5:30 p.m. Monday through Friday and 4:30 p.m. on Saturday, and crediting Defendants with a full, uninterrupted thirty-minute meal break each workday, Plaintiff regularly worked approximately fifty-seven (57) compensable hours per week — approximately seventeen (17) hours over forty (40) each week — and worked additional hours in weeks when his weekday shifts extended to approximately 6:00 p.m. or 6:30 p.m.

43. Because Defendants maintained no time clock or other timekeeping system for Plaintiff, and upon information and belief failed to make, keep, and preserve accurate records of the hours Plaintiff worked, the approximately 57-hour weekly figure alleged herein is a reasonable, conservative approximation based upon Plaintiff's recollection of his regular schedule, the notes of his hours that Plaintiff sometimes kept in a personal notebook, and the messages by which Defendants directed him to job sites. Where, as here, the employer's records are inaccurate or inadequate, Plaintiff need only produce sufficient evidence from which the amount and extent of his uncompensated work may be inferred as a matter of just and reasonable inference. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

**C. Timekeeping and Records**

44. Defendants did not require Plaintiff to punch in or out, to clock in or out, or otherwise to record his starting and ending times in any system maintained by Defendants.

45. Upon information and belief, Defendants failed to make, keep, and preserve accurate records of the daily and weekly hours Plaintiff worked, as required by the FLSA, 29 U.S.C. § 211(c) and 29 C.F.R. Part 516, and the NYLL, NYLL § 661 and 12 N.Y.C.R.R. § 142-2.6.

46. Plaintiff sometimes recorded his own hours in a personal notebook, and he retains messages reflecting the job-site assignments and reporting instructions that Defendants sent him.

**D. Plaintiff's Rate and Method of Pay**

47. Defendants paid Plaintiff on an hourly basis at all times.

48. From the beginning of his employment in approximately October 2022 through approximately October 2024, Defendants paid Plaintiff at the rate of approximately $16.00 per hour. From approximately November 2024 through the end of his employment, Defendants paid Plaintiff at the rate of $16.50 per hour. Notably, Plaintiff's $16.00 hourly rate equaled the New York State minimum wage applicable to New York City when it rose to $16.00 on January 1, 2024, and Defendants increased Plaintiff's rate to $16.50 in anticipation of the minimum wage increase to $16.50 effective January 1, 2025, demonstrating Defendants' awareness of their obligations under New York's wage-and-hour laws.

49. Defendants paid Plaintiff by company check, generally approximately every two weeks, notwithstanding the requirement under NYLL  191(1)(a) that manual workers be paid on a weekly basis. Plaintiff received no bonuses, tips, or other compensation beyond his hourly wages.

50. Defendants did not provide Plaintiff with wage statements, pay stubs, or any other written statement of his hours worked, rates of pay, gross wages, deductions, or net wages with his wage payments, as required by NYLL  195(3), and Plaintiff did not receive a written notice at the time of hiring of his rate of pay, regular payday, or other information required by NYLL  195(1).

**E. Defendants Paid Straight Time for Overtime**

51. Throughout Plaintiff's employment, Defendants paid Plaintiff at his straight-time hourly rate for all hours he worked, including the hours he worked in excess of forty (40) in a workweek.

52. Defendants never paid Plaintiff one and one-half times his regular rate of pay for any hour worked in excess of forty (40) in a workweek. As a result, in a typical 57-hour week, Plaintiff was deprived of the additional half-time overtime premium owed on approximately seventeen (17) overtime hours.

**F. Defendants' Own Documents Corroborate Plaintiff's Account**

53. A check dated November 24, 2023, in the amount of $1,800.00, drawn by "L.B. Nova Construction Corp." on an account at Capital One Bank and bearing the Warren, New Jersey mailing address, was issued to Plaintiff. At Plaintiff's then-applicable $16.00 hourly rate, $1,800.00 equals exactly 112.5 hours of straight-time pay — an amount consistent with payment of straight time, with no overtime premium, for approximately 56 hours of work per week over a two-week period.

54. Two checks issued to Plaintiff in August 2025 — a check dated August 11, 2025, in the amount of $443.70, drawn on a TD Bank account and bearing the Astoria, New York address, and a check dated August 20, 2025, in the amount of $1,503.30, drawn on a Capital One Bank account and bearing the Warren, New Jersey address — together total $1,947.00, and upon information and belief represent payment for the same two-week pay period. That Defendants issued two checks from different bank accounts at different addresses to cover a single pay period further reflects the informal and irregular manner in which Defendants administered their payroll. At Plaintiff's then-applicable $16.50 hourly rate, $1,947.00 equals exactly 118 hours of straight-

time pay — an amount consistent with payment of straight time, with no overtime premium, for approximately 59 hours of work per week over a two-week span.

55. The foregoing checks corroborate Plaintiff's account that Defendants paid him a straight-time hourly rate for all hours worked, including overtime hours, and paid him no overtime premium.

56. In addition, the April 22, 2025 letter on L.B. Nova letterhead, signed by Defendant Lugo as "President," certifies that Plaintiff "has been working in our organization on a full-time basis, for 2 1/2 years" and "earns $16.50 per hour" — corroborating Plaintiff's employment relationship with L.B. Nova, the approximate commencement of his employment in or about October 2022 (i.e., approximately two and one-half years before the letter's April 2025 date), and his hourly rate of pay.

**G. Defendants' Violations Were Willful**

57. Defendants' failure to pay overtime compensation was willful. Defendants operated a construction business for years, employing, upon information and belief, approximately sixty (60) workers across multiple job sites, and yet Defendants: (a) maintained no timekeeping system for Plaintiff; (b) furnished no wage statements with Plaintiff's pay; (c) adjusted Plaintiff's hourly rate from $16.00 to $16.50 in anticipation of the January 1, 2025 New York State minimum wage increase applicable to New York City, demonstrating their awareness of wage-and-hour requirements; (d) scheduled Plaintiff to work approximately 57 hours per week, week after week, such that his overtime hours were evident from the schedule Defendants themselves set; and (e) nevertheless paid Plaintiff his straight-time rate for every hour he worked.

58. By reason of the foregoing conduct, Defendants knew or showed reckless disregard for whether their pay practices violated the FLSA and the NYLL, and Defendants' violations were not undertaken in good faith.

**H. FLSA Coverage**

59. At all relevant times, L.B. Nova, together with the operations controlled by Lugo, constituted an "enterprise" within the meaning of 29 U.S.C. § 203(r) and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

60. In performing Defendants' construction and roofing work, Defendants' employees, including Plaintiff, regularly handled and worked with goods and materials — including roofing and waterproofing materials, insulation, paint, metal, pavers, torches, tools, and equipment — that had been produced for and moved in interstate commerce.

61. Upon information and belief, based upon the nature and scale of Defendants' operations — including the employment of approximately sixty (60) workers performing construction and roofing work at multiple job sites across New York, a labor-intensive industry in which payroll alone for that workforce would be expected to exceed $500,000 annually — L.B. Nova had an annual gross volume of sales made or business done of not less than $500,000 during each year relevant to this action.

62. At all relevant times, Plaintiff was an employee employed by an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 206 and 207. In addition, Plaintiff was individually engaged in commerce and/or in the production of goods for commerce within the meaning of 29 U.S.C. 207(a)(1) by virtue of his regular handling and use of goods, materials, and

equipment that had moved in interstate commerce, including roofing and waterproofing materials, insulation, tools, and equipment.

**FIRST CAUSE OF ACTION**

**(Fair Labor Standards Act — Unpaid Overtime, 29 U.S.C. §§ 207 and 216(b))**
**(Against All Defendants)**

63. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

64. At all relevant times, Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203(d) and employed Plaintiff within the meaning of 29 U.S.C. § 203(g).

65. Pursuant to 29 U.S.C. § 207(a)(1), Defendants were required to pay Plaintiff overtime compensation at a rate of not less than one and one-half times his regular rate of pay for each hour worked in excess of forty (40) in a workweek.

66. Plaintiff's regular rate of pay was his hourly rate — approximately $16.00 per hour through approximately October 2024 and $16.50 per hour thereafter. Because Defendants paid Plaintiff at his straight-time hourly rate for all hours worked, Defendants failed to pay Plaintiff the additional half-time overtime premium — approximately $8.00 per overtime hour and, later, $8.25 per overtime hour — for each of the approximately seventeen (17) hours per week that Plaintiff worked in excess of forty (40).

67. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a), and a three-year statute of limitations therefore applies to Plaintiff's FLSA claims, reaching back to the earliest date within that three-year period preceding the filing of this action.

68. Defendants' violations were not in good faith, and Defendants lacked reasonable grounds to believe that their conduct complied with the FLSA.

69. As a result of Defendants' willful violations of the FLSA, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime compensation, an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) (or, in the alternative, prejudgment interest), post-judgment interest, and his reasonable attorneys' fees and the costs of this action, in amounts to be determined at trial.

**SECOND CAUSE OF ACTION**

**(New York Labor Law — Unpaid Overtime, NYLL Article 19; 12 N.Y.C.R.R. § 142-2.2)**
**(Against All Defendants)**

70. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth herein.

71. At all relevant times, Defendants were Plaintiff's employers within the meaning of NYLL §§ 190(3) and 651(6), and Plaintiff was Defendants' employee within the meaning of NYLL §§ 190(2) and 651(5).

72. Plaintiff's employment was subject to the New York Minimum Wage Order for Miscellaneous Industries and Occupations, 12 N.Y.C.R.R. Part 142.

73. Pursuant to NYLL §§ 650 et seq. and 12 N.Y.C.R.R. § 142-2.2, Defendants were required to pay Plaintiff overtime compensation at a rate of one and one-half times his regular rate of pay for each hour worked in excess of forty (40) in a workweek.

74. Defendants failed to pay Plaintiff any overtime premium for his overtime hours, and instead paid Plaintiff his straight-time hourly rate for all hours worked, in violation of the NYLL and 12 N.Y.C.R.R. § 142-2.2.

75. Defendants' violations of the NYLL were willful within the meaning of NYLL §§ 198 and 663, and neither Defendant, including Lugo individually, had a good-faith basis for believing that his or its pay practices complied with the NYLL.

76. Plaintiff's NYLL claims are subject to a six-year statute of limitations, NYLL §§ 198(3) and 663(3), and therefore encompass Plaintiff's entire period of employment with Defendants.

77. As a result of Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime compensation, liquidated damages equal to one hundred percent (100%) of his unpaid overtime wages pursuant to NYLL §§ 198(1-a) and 663(1), subject to the Court's determination of the appropriate measure of liquidated damages to avoid duplicative recovery, prejudgment interest pursuant to N.Y. C.P.L.R. §§ 5001 and 5004, post-judgment interest, and his reasonable attorneys' fees and the costs of this action, in amounts to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff BYRON D. SALDANA respectfully requests that this Court enter judgment against Defendants L.B. NOVA CONSTRUCTION CORP. and ARTURO LUGO, jointly and severally, as follows:

a. Declaring that Defendants violated the overtime provisions of the FLSA, 29 U.S.C. § 207, and that Defendants' violations were willful;

b. Declaring that Defendants violated the overtime provisions of the NYLL and 12 N.Y.C.R.R. § 142-2.2, and that Defendants' violations were willful;

c. Awarding Plaintiff his unpaid overtime compensation under the FLSA and the NYLL, without duplicative recovery of unpaid wages for the same period;

d. Awarding Plaintiff liquidated damages equal to the amount of his unpaid overtime wages pursuant to 29 U.S.C. § 216(b) and/or NYLL §§ 198(1-a) and 663(1), subject to the Court's determination of the appropriate measure of liquidated damages;

e. Awarding Plaintiff prejudgment interest on his unpaid wages recovered under the NYLL pursuant to N.Y. C.P.L.R. §§ 5001 and 5004, and, in the alternative, prejudgment interest on his unpaid wages recovered under the FLSA in the event the Court declines to award FLSA liquidated damages pursuant to 29 U.S.C. 260;

f. Awarding Plaintiff post-judgment interest pursuant to 28 U.S.C. § 1961;

g. Awarding Plaintiff his reasonable attorneys' fees and the costs and disbursements of this action pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663; and

h. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
_______________, 2026

STILLMAN LEGAL, P.C.

By: _______________________________

Lina Stillman, Esq.
42 Broadway, 12th Floor
New York, New York 10004
Tel: (212) 832-1000
Attorneys for Plaintiff Byron D. Saldana